The court delivered its opinion as follows — “ This case i» comprised within a very narrow compass, viz. Whether the limitation over to the brothers and sisters of the testator T. L. Elliott, is so remote a contingency) as will not be favoured in law, whatever might have been *189 his intention. It is a well known rule, that in the Construction of wills, the testator’s intention is to prevail, if not against the rules of law. The intention of the testator in this case, to give the estate to the brothers and sisters on the death of his children, without issue, is as plain as words can make it. The question then is, does the rule of law interpose its authority, to prevent the operation of such intention? That it does and renders the limitation void, by reason of the remoteness of the contingency, and the generality of the Words, has been very ably argued, and many authorities quoted in support of such argument. To go into a minute investigation of them, would, we think, be unnecessary; as the case is to be decided on a very plain rule of law; one that is as old as the law itself, and which has never been impeached on any fair grounds — ¥e mean the construction of limitations: and where they have been confined to lives in being, they have ever been admitted to take their full operation. We therefore find no difficulty in our minds, when we say, that in the present case, the limitation over to the brothers and sisters of T. L. Elliott, being confined to lives in being, and some of whom were actually in being at the time, (and one is so still,) the estate ought to have vested in them, viz. on the death of Mary B. Elliott, without leaving issue, is such a limitation as always has been, and must now be supported. And if this doctrine should ever be reversed, it appears to us, that it would impeach most of the estates in this country now held under wills, which have received the same construction we have now given to the present; though perhaps not by judicial decisions. As to the generality of the words being such as renders the limitation void on that account, and vests the estate in the first taker, in nature of an estate tail, we can by no means admit this to be the case, because from several decisions in this court, viz. in the case of Ladson and others vs. Executors of Smith; Sealy and others vs. Executors of Ball; and Sams vs. Mathews and others; and in thé court of common pleas, the case of Keating vs. Reynolds, the words of the wills (on which the decisions of those cases were founded,) were more general, and envel *190 oped in greater obscurity than in the present case; yet the intention of the testator governed in all those cases, on account of the liberal construction that was given to the words of the will. In the present case, the words “ and should die and leave no lawful heirs of their body,” we conceive so far impugn the generality of the other words of the will, as takes it out of the rigid rule of law, and makes way for the equitable construction we have given them, viz. leaving no issue at the time of their death, at the samé time it lets in the limitation as far as it goes to the lives in being. We therefore think the limitation to the brothers and sisters of T. L. Elliott, is good, and such of them as were entitled must take accordingly. Let it be referred to the mastei’ to enquire what part of the personal estate of the testator, Thomas Law Elliott, came into the possession of Bernard Elliott, deceased, on his intermarriage with Mary Bellinger Elliott; what remains of said estate in possession of the executors or representatives of the said Bernard Elliott; and what have been the profits of the labour of the negroes since the death of Mary Bellinger Elliott, and report accordingly.
it. b. p. 276.
Order of reference.

AUGUST. 1791.

3i. B.p. 297.
.Decree.
Afterwards the master’s report was made and read, and on motion of Mr. Read, solicitor for complainants, ordered that the same be confirmed; that the defendants deliver over to complainants the fifty-four negroes first mentioned in the list’ annexed to the report: That they account for the other fourteen negroes, at the rate of fifty pounds each; and that they pay over the sum of four thousand pounds to the complainants, in three annual payments, with interest from the 18th March last, reserving the share of the negroes which are claimed by the complainant R. Beresford; and also the share of the four thousand pounds in right of his wife, till the further order of court, and that the defendants do pay the costs of this suit